JOURNAL ENTRY and OPINION
{¶ 1} Plaintiffs-appellants Joseph E. and Patricia G. Feighan ("the Feighans") appeal from the decision of the Cuyahoga County Court of Common Pleas that upheld the granting of a variance by defendant-appellee City of Cleveland Board of Zoning Appeals ("Board") to defendant-appellee George Katsikas ("Katsikas"). For the reasons stated below, we affirm.
 {¶ 2} In June 2001, Katsikas began the construction of a 9-by 25-foot deck with a built-in hot tub ("deck"). Because Katsikas' home is located on a corner lot, his backyard is visible from two heavily traveled streets. In order to preserve his property and to avoid creating an attractive nuisance, Katsikas had the deck built on the southwest corner of his home. As a result, the deck runs parallel to the property line that separates Katsikas' property from that of the Feighans. The property line is demarcated by the Feighans' six-foot-tall wooden fence.
 {¶ 3} After construction began, the Feighans discovered that Katsikas had failed to obtain the necessary permits to build the deck. Specifically, the construction ran contrary to the yards and courts requirements of Cleveland Codified Ordinances 357.09(b)(1).[1] On June 28, 2001, the City of Cleveland issued a stop work order and ordered Katsikas to obtain the necessary permits. Katsikas sought a variance from the City of Cleveland Department of Community Development, Division of Building and Housing, to build the deck but his request was denied. He appealed to the Board.
 {¶ 4} On September 4, 2001 and September 17, 2001, the Board conducted public hearings on the matter and unanimously granted the variance to Katsikas. On October 19, 2001, and pursuant to R.C. 2506, the Feighans filed suit in the Cuyahoga County Court of Common Pleas. On February 19, 2004, the court affirmed the decision of the Board.
 {¶ 5} From that decision, appellants appeal and advance five assignments of error for our review.[2]
 I. {¶ 6} In their first and second assignments of error, the Feighans argue that "the trial court erred in sustaining the variance granted by the Cleveland Board of Zoning Appeals in that the Board had misused its power by ignoring the detriment to the adjoining neighbor's rights and to the character of the neighborhood, thus thwarting the legislative intent of the zoning code for the area," and that "the trial court erred in sustaining the variance because the preponderance of evidence necessary to prove or disprove practical difficulty was in favor of the appellants." We disagree.
 {¶ 7} Variances are intended only to permit amelioration of strict compliance of the zoning ordinance and are not authorized to change zoning schemes. Dyke v. City of Shaker Heights,
Cuyahoga App. No. 83010, 2004-Ohio-514. In a R.C. 2506 administrative appeal from a decision of the board of zoning appeals to the common pleas court, the trial court, pursuant to R.C. 2506.04, may reverse the board if it finds that the board's decision is not supported by a preponderance of reliable, probative, and substantial evidence. An appeal to the Court of Appeals of Ohio, pursuant to R.C. 2506.04, is more limited in scope and requires that we affirm the common pleas court unless, as a matter of law, the decision of the court is not supported by a preponderance of reliable, probative, and substantial evidence.Nigro v. City of Parma, Cuyahoga App. No. 82594, 2003-Ohio-6637.
 {¶ 8} In an appeal of a zoning determination, the trial court must act under the presumption that the determination of the board of zoning appeals is valid. Id. The authority to permit a variance does not include the authority to alter the character and use of a zoning district. Id. The burden of overcoming the presumption that the determination of a board of zoning appeals is valid and showing invalidity rests upon the party opposing the determination. Nigro, supra. A board of zoning appeals is given wide latitude in deciding whether to grant or deny an area variance. Wolstein v. City of Pepper Pike City Council,156 Ohio App.3d 20, 2004-Ohio-361. Further, its decision to deny a variance is to be accorded a presumption of validity. Id. "The fact that the court of appeals might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." Dyke, supra.
 {¶ 9} In Wolstein, this court reiterated the seven nonexhaustive factors upon which a zoning appeals board relies when determining the practical difficulties an applicant for variance may suffer. Those factors that are to be considered and weighed in determining whether a property owner seeking an area variance has encountered practical difficulties include, but are not limited to: (1) whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely affect the delivery of governmental services (e.g., water, sewer, garbage); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance. Id.
 {¶ 10} A property owner applying for an area variance must demonstrate "practical difficulties" in complying with a zoning regulation. Dyke, supra. A property owner encounters "practical difficulties" whenever an area zoning requirement unreasonably deprives him of a permitted use of his property. Id.
 {¶ 11} In the case sub judice, the trial court found that "local conditions and the evidence presented justify the Board in making the exception requested. The granting of the appeal will not be harmful to neighboring properties or to their occupants. The refusal of this appeal would work an unreasonable hardship upon the owner with no corresponding gain to the community * * *." We agree and find the trial court's affirmance was supported by a preponderance of reliable, probative, and substantial evidence.
 {¶ 12} The Feighans argue that the (1) variance is substantial; (2) the beneficial use of the deck and hot tub could have been enjoyed without the variance; (3) adjoining property owners will suffer substantial detriment; (4) a different design plan could have been used to build the deck; and (5) allowing the deck would establish precedent such that the character of each property in the neighborhood would be affected.
 {¶ 13} The record establishes that the deck, although within the five feet from Katsikas' home, is largely hidden from other neighbors because of the six-foot fence and foliage. The Feighans have not contradicted Katsikas' position that the addition of the deck is a financial improvement upon the home. Also, nothing in the record indicates that the essential character of the neighborhood will be substantially altered by the variance nor any government service affected. Lastly, the Feighans' contention that the granting of the variance will "encourage more * * * violations" is wholly unsupported.
 {¶ 14} As stated above, the Feighans have presented no evidence to suggest that neighbors will suffer detriment. In fact, contrary to the Feighans' position, Katsikas presented the testimony of two neighbors who found the project to be a benefit to the neighborhood and the project to be well thought out and planned.[3] Further, the Feighans' assertions that "the privacy enjoyed in their yard for the last forty years, the goodwill between themselves and their neighbors, and finally, the resale value of their home have all been affected" are not supported in the record. Nothing was presented to suggest the addition of the deck would diminish property values. Testimony established that privacy was not an overriding concern for people or that the neighborhood had become divided over the addition.
 {¶ 15} Lastly, the provisions of the City of Cleveland Zoning Code "shall be held to be the minimum requirements adopted for the promotion of public health, safety, morals and general welfare." The Feighans have failed to present evidence to suggest the construction of the deck lessens these minimum requirements. Under the circumstances of this case, the deck was placed in a location where both privacy and security were considered.
 {¶ 16} We find that there was a preponderance of reliable, probative, and substantial evidence to support the administrative decision. Thus, the trial court did not err in affirming that decision.
 {¶ 17} The Feighans' first and second assignments of error are overruled.
 II. {¶ 18} In their third assignment of error, the Feighans argue that "the trial court abused its discretion in sustaining the variance in that said variance violates appellants' rights to equal treatment under the law as guaranteed by theFourteenth Amendment to the U.S. Constitution." The Feighans, however, failed to raise this issue at the trial court and, therefore, have waived it for purposes of appeal. Stores Realty Co. v.Cleveland (1975), 41 Ohio St.2d 41, 43; Ohio City Orthopedics,Inc. v. Medical Billing Receivables, Inc., Cuyahoga App. No. 81930, 2003-Ohio-1881.
 {¶ 19} The Feighans' third assignment of error is overruled.
 III. {¶ 20} In their fourth assignment of error, the Feighans argue that "the trial court erred by allowing the Resolution of the Board of Zoning Appeals, dated September 24, 2001 when there are two fatal flaws in said Resolution: the admission of unsubstantiated evidence of precedence and the reasoning that `refusal of this appeal would work an unreasonable hardship upon the owner.'" We disagree.
 {¶ 21} The Feighans argue that the Board improperly found that precedent had already been set within the neighborhood in justifying the granting of the variance. Specifically, the Board analyzed thirty instances where the city's building codes were not observed. The Feighans argue that the Board's recognition of these various neighborhood infractions is an improper validation of them. We disagree.
 {¶ 22} Primary among the Feighans' complaints against the variance is that it will substantially affect the character of the neighborhood. The Board was justified by inquiring into the condition of the neighborhood to learn what, if any, effect the deck and hot tub would have on the community. Also, the Board's finding of precedence was only one of several findings it made in support of granting the variance. Absent this finding, the Board's granting of the variance would still be proper.
 {¶ 23} The Feighans' argument that the court erred in affirming the Board's finding that "refusal of this appeal would work an unreasonable hardship upon the owner" is also without merit. They contend that the hardship the Board is referring to "is the hardship of moving the construction upon denial of the variance."
 {¶ 24} The Board found that "the refusal of this appeal would work an unreasonable hardship upon the owner with no corresponding gain to the community * * *." This finding relates directly to the seven factors to be considered in determining whether an applicant for variance will suffer practical difficulty. As no detriment will befall the community by way of the deck's construction, to prevent Katsikas from building it would, in fact, be an "unreasonable hardship." The Feighans have failed to substantiate their claim that the Board's finding relates to the expenses Katsikas would incur in having to remove the deck.[4]
 {¶ 25} The Feighans' fourth assignment of error is overruled.
 IV. {¶ 26} In their final assignment of error, the Feighans argue that "the trial court abused its discretion by the egregious error of sustaining an illegal and dangerous variance which is in violation of the codified ordinances." Again, the Feighans failed to raise the issues addressed in this assignment of error at the trial court. Therefore, they have waived any appeal. StoresRealty Co. v. Cleveland (1975), 41 Ohio St.2d 41, 43; Ohio CityOrthopedics, Inc. v. Medical Billing Receivables, Inc.,
Cuyahoga App. No. 81930, 2003-Ohio-1881.
 {¶ 27} The Feighans' fifth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, P.J., and Celebrezze, Jr., J., Concur.
[1] Codified Ordinance 357.09(b)(1) reads: "Limited One-Family Districts. In a Limited One-Family District the minimum width of an interior side yard shall be five feet and the aggregate width of side yards on the same premises shall be not less than twenty feet. No building shall be erected less than twenty feet from a main building on an adjoining lot within such District, nor less than ten feet from a main building on an adjoining lot in other Residence Districts."
[2] The Edgewater Homeowners' Association ("EHA") filed an amicus curiae brief in support of the Feighans and set forth one assignment of error. Because EHA is not a party to this action, let alone an "aggrieved party," the amicus curiae lacks standing to present an assignment of error to which we must respond. App.R. 12; Kenwood Lincoln-Mercury v. DaimlerChrysler Corp.,
Hamilton App. No. C-000784, 2002-Ohio-111.
[3] All together, at least ten neighbors signed a petition supporting the variance and indicating that it would not have a negative impact on the neighborhood or themselves. Further, the petition stated that the neighbors felt the property value was enhanced by the variance and that it would have a positive impact on the community.
[4] The argument that the Board has previously required homeowners to remove construction does not support the Feighans' position. If the Board has required the removal of large construction projects, it presumably would not have a problem requiring Katsikas to remove his deck. However, in this case, there was reliable, probative, and substantial evidence upon which the Board relied upon in granting the variance.