[Cite as *Stumpff v. Riverside Bd. of Zoning Appeals*, 2020-Ohio-4328.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

| | | |
|---|---|---|
| KENNETH M. STUMPFF | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 28589 |
| | : | |
| v. | : | Trial Court Case No. 2018-CV-1720 |
| | : | |
| THE CITY OF RIVERSIDE BOARD OF ZONING APPEALS | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 4th day of September, 2020.

. . . . . . . . . . .

KONRAD KUCZAK, Atty. Reg. No. 0011186, 130 West Second Street, Suite 1010, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellant

DALMA C. GRANDJEAN, Atty. Reg. No. 0024841 and STEVEN E. BACON, Atty. Reg. No. 0059926, 1 South Main Street, Suite 1590, Dayton, Ohio 45402
    Attorneys for Defendant-Appellee

. . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Plaintiff-appellant, Kenneth M. Stumpff, appeals from the trial court's judgment of September 30, 2019, in which the court dismissed his administrative appeal of a decision of the City of Riverside Board of Zoning Appeals (the "Board"). Stumpff argues that the trial court abused its discretion by affirming the Board because the court effectively applied the wrong standard of proof to his claim of a continuing, nonconforming use of property, because the court erred by considering inadmissible evidence, and because the court erred by failing to resolve an apparent conflict between the testimony of a witness and certain documentary evidence.

{¶ 2} We hold that the trial court did not abuse its discretion by affirming the Board's decision because Stumpff did not meet his burden to prove a nonconforming use. In addition, we hold that the trial court did not err by considering inadmissible evidence, and that the court did not err by failing to resolve the apparent conflict between the testimonial evidence and the documentary evidence. Therefore, the court's judgment is affirmed.

## I. Facts and Procedural History

{¶ 3} On or about September 22, 1995, Stumpff purchased Parcel No. I39 0016 0016 ("Parcel 16") and Parcel No. I39 0016 0018 ("Parcel 18") from Greg Salmons, and he leased Parcel No. I39 0016 0019 ("Parcel 19") from Salmons on the same date. Decision of the City of Riverside Board of Zoning Appeals 1-2, Apr. 19, 2018.[1] Under the City of Riverside's 2014 zoning code, the three parcels lie presently in an R-3, Medium Density Residential District; under the city's previous zoning code, the parcels were in an

---

[1] Citations in this opinion to the Board's decision refer to page numbers, rather than to paragraph numbers.

R-4 Single Family Residential District.   *Id.* at 2; *see* Codified Ordinances of Riverside, Ohio, Sections 1101.09 (establishing that the current "Unified Development Ordinance" took effect on January 1, 2014) and 1107.05(D) (defining "R-3 Medium Density Residential District").   Soon afterward, Stumpff began operating a junk yard, an automobile salvage yard, or both.   *See* Transcript of Board Hearing 6-7, Dec. 12, 2017;[2] *see also* R.C. 4735.05(B) (defining the term "[j]unk yard"); Codified Ordinances, Section 1117.03 (defining the term "[a]utomobile [s]alvage [y]ard").   He also operated an automobile repair business.   *See* Transcript of Board Hearing 12.

{¶ 4} Stumpff applied for a permit in or around October 1997 to place a fence on Parcels 18 and 19.   *See* Administrative Transcript, Ex. 6.   In a letter dated October 28, 1997, the City of Riverside's Zoning and Code Enforcement Officer informed Stumpff of the requirements he would have to meet to obtain authorization for the fence, adding that in light of "what ha[d] recently been observed on [the] property," the city's zoning regulations further required that Stumpff clear the parcels of "overgrown grasses, debris, and other materials which may cause a fire, health, [or] safety hazard, or general unsightliness," and that Stumpff clear the parcels of "junk, inoperable, or unlicensed vehicle[s]."   *Id.*   Stumpff's application was later granted.   *Id.* at Ex. 7.

{¶ 5} On December 28, 2015, the City of Riverside issued a certificate of non-conformance with respect to Parcels 16 and 18.   *Id.* at Ex. 11.   The certificate stated that although "[t]he use of the property for auto repair [was] not consistent with the zoning

---

[2] The transcript of the hearing is attached as Exhibit 3 to the administrative transcript filed by the Board on June 12, 2018.   In the administrative transcript, the word "item" is used instead of the word "exhibit."   Citations to the hearing transcript refer to page numbers, rather than to Bates stamps.

classification as outlined in [Codified Ordinances, Section] 1107.05(D) R-3 Single Family Residential District," the "use of the property for auto repair [was nevertheless] considered a legal nonconforming use." *Id.* Stumpff was advised, however, that "[a]ll future uses [would have to] be consistent" with the city's zoning code. *Id.* The official who signed the certificate was not aware that Stumpff had leased Parcel 19 from Salmons, and in subsequent testimony before the Board, the official indicated that Stumpff did not mention any use of Parcels 16 and 18 for purposes other than "minor auto repair." *See* Transcript of Board Hearing 22.

{¶ 6} On October 2, 2017, the City of Riverside served a notice of violation on Stumpff regarding Parcels 16, 18 and 19. Stumpff challenged the notice, and the Board held a hearing on December 12, 2017. At the hearing, Stumpff argued that his use of the parcels as an automobile salvage yard was "a valid, nonconforming use * * * because of the fact that even before there was a City of Riverside, there was a junk yard on [the land]." *See* Decision of the City of Riverside Board of Zoning Appeals 2-3. He testified that before he leased Parcel 19 and purchased Parcels 16 and 18, their previous owner— Salmons—had used them as "a junk yard" for "many, many years," and that "there was always an auto repair shop" on the site. *See id.* at 6, 12 and 16; *see also* Administrative Transcript, Ex. 6. Stumpff indicated that he, too, had operated an automobile repair business there. *See* Transcript of Board Hearing 12. His description of his use of the site was also consistent with the term "automobile salvage yard," as the term is defined in the Codified Ordinances.[3] *See* Codified Ordinances, Section 1117.03; Transcript of

---

[3] Stumpff resisted the term "automobile salvage yard," but his description of his use of the parcels satisfied the definition. *See* Codified Ordinances, Section 1117.03; Transcript of Board Hearing 7-8.

Board Hearing 6-8 and 10-11 and 14-15; *see also* R.C. 4738.01(F) and 4738.02(A) (relating to the sale of "salvage motor vehicle parts").

{¶ 7} In a decision dated April 9, 2018, the Board found that Stumpff did not prove "that a[n] [automobile] [s]alvage [y]ard * * * was ever a lawful use [of] the [p]arcels [at] issue, which is a requirement for a nonconforming use to continue [following] a change in the zoning code." Decision of City of Riverside Board of Zoning Appeals 6. The trial court affirmed the Board in its judgment of September 30, 2019, and Stumpff timely filed a notice of appeal to this court on October 29, 2019. Both parties thereafter requested a series of extensions of time for the submission of their briefs, which has since been completed.

## II. Analysis

{¶ 8} For his first assignment of error, Stumpff contends that:

THE COMMON PLEAS COURT COMMITTED AN ERROR OF LAW BY AFFIRMING AN ADMINISTRATIVE DECISION WHICH WAS BASED UPON STUMPFF'S FAILURE TO PROVE THAT BOTH STUMPFF AND THE PRIOR OWNERS OF THE PROPERTIES HAD LICENSES TO OPERATE A JUNK YARD OR A SALVAGE YARD ON THE PREMISES.

{¶ 9} Stumpff argues that the Board and the trial court erred by finding that he did not prove that his use of Parcels 16, 18, and 19 was a continuing, nonconforming use under R.C. 713.15. Appellant's Brief 15-17. Specifically, Stumpff argues that the Board and the trial court erred by effectively requiring proof that he, and Salmons before him, had a license to operate an automobile salvage yard on the parcels. *Id.*; *see* Decision,

Order and Entry Dismissing Administrative Appeal 5-7, Sept. 30, 2019; Decision of the City of Riverside Board of Zoning Appeals 6-7. Noting that a nonconforming use, once established, runs with the land, Stumpff maintains that the "prior lawfulness of an existing use is not contingent upon anything other than whether the use was in conformity with 'land use regulations,' [and] certainly not on the occupational licensing [required] by [R.C.] 4737.07 [and] [R.C.] 4738.02." Appellant's Brief at 16.

{¶ 10} Every "final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state may be reviewed by [i.e. appealed to] the court of common pleas of the county in which the principal office of the political subdivision is located." R.C. 2506.01(A). The record in an appeal under R.C. Chapter 2506 is "confined to the transcript" of "all the original papers, testimony, and evidence offered, heard, and taken into consideration" by the "officer or body from which the appeal is taken." *See* R.C. 2506.02 and 2506.03(A).

{¶ 11} Consistent "with its findings [of fact], the [common pleas] court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body [from whose decision or order the appeal is taken] with instructions to enter a [revised] order, adjudication, or decision." R.C. 2506.04. In considering the underlying decision or order, the common pleas court "is to give due deference to the [officer or body's] resolution of evidentiary conflicts" and "may not 'blatantly substitute its judgment for that of the' " officer or body. *Snyder v. Beavercreek Twp.*, 2d Dist. Greene No. 2005-CA-53, 2006-Ohio-1612, ¶ 24, quoting *Dudukovich v. Lorain Metro. Housing Auth.*, 58 Ohio St. 2d 202, 207, 389 N.E.2d 1113 (1979). If the underlying decision or order "is supported by a preponderance of reliable, probative and substantial evidence,"

then the common pleas court "is required to affirm it." *Id.*, citing *Dudukovich* at 207.

**{¶ 12}** The judgment of the common pleas court, in turn, "may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure." R.C. 2506.04. On review, an appellate court should evaluate whether "the court of common pleas did [or did] not abuse its discretion." (Citation omitted.) *Parisi v. City of Dayton*, 2d Dist. Montgomery No. 20045, 2004-Ohio-2739, ¶ 12. An " 'abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**{¶ 13}** Under R.C. 713.15, the "lawful use of any dwelling, building, or structure and of any land or premises, as existing and lawful at the time of enact[ment] [of] a zoning ordinance or an amendment to the ordinance, may be continued [as a 'nonconforming use'], although such use does not conform with the provisions of [the zoning] ordinance or amendment." The "burden of proving a nonconforming use is on the party claiming the use." *Penewit v. Spring Valley Bd. of Zoning Appeals*, 2d Dist. Greene No. 2019-CA-6, 2019-Ohio-3200, ¶ 32. To prove a nonconforming use, a landowner must show by a preponderance of the evidence that "the use [was] in existence prior to the enactment of [any applicable] land use regulation[s]," and that the use was "lawful at the time [it] was established." (Citations omitted.) *Belich v. City of Olmsted Falls*, 8th Dist. Cuyahoga Nos. 84537 & 84807, 2005-Ohio-190, ¶ 16; *Wooster v. Entertainment One, Inc.*, 158 Ohio App.3d 161, 2004-Ohio-3846, 814 N.E.2d 521, ¶ 48 (9th Dist.).

**{¶ 14}** Pursuant to Codified Ordinances, Section 1117.03, an "[a]utomobile [s]alvage [y]ard" is defined as "[a]ny lot or parcel that is exposed to the elements and upon

which motor vehicles of any kind [that are] incapable of being operated and not currently licensed are placed, located, or found." Parcels 16, 18 and 19 presently lie in an R-3, Medium Density Residential District. Decision of the City of Riverside Board of Zoning Appeals 2. To be entitled to use the parcels as an automobile salvage yard, Stumpff had to show that such use of the parcels predated the enactment of the city's zoning ordinances, under which the use is not permitted. *See* Codified Ordinances, Section 1107.05(D).

{¶ 15} Stumpff argues that the Board and the trial court erred by finding that, because he did not prove that either he or Salmons ever had a license to operate an automobile salvage yard, he did not prove that his use of Parcels 16, 18 and 19 was a continuation of a nonconforming use begun by Salmons before the enactment of the City of Riverside's first zoning ordinances. *See* Appellant's Brief 17; *see also* Decision, Order and Entry Dismissing Administrative Appeal 5-7; Decision of the City of Riverside Board of Zoning Appeals 6-7. Although the Board and the trial court did emphasize the absence of any evidence of such licensure, Stumpff's characterization is not entirely accurate. The Board, for instance, referred to the "confusing testimony" it had received "regarding the [allegedly] continuous use of the [parcels] as a salvage yard," and it found that at the time Stumpff purchased Parcels 16 and 18, and leased Parcel 19, the parcels were "apparently * * * not being operated as a[n] [automobile] salvage yard." Decision of the City of Riverside Board of Zoning Appeals 8.

{¶ 16} At the Board's hearing of December 12, 2017, Stumpff testified that Salmons "had a junk yard [on the parcels] for many, many years" before Stumpff purchased Parcels 16 and 18 and leased Parcel 19 from Salmons in 1995, mentioning

specifically that at the time of the purchase, Salmons had left "a car flipped over on [its] side [t]here for over two months."  Transcript of Board Hearing 6.  He also testified that the site had "always [been used to run] an auto repair shop," adding that Salmons crushed vehicles there with a wrecking ball.  *Id.* at 16.  By Stumpff's recollection, the site had been used for these purposes continuously for more than 20 years before he occupied the site.  *See id.* at 6-7 and 16.

{¶ 17} The balance of the record is not entirely consistent with Stumpff's testimony. In 1995, the City of Riverside commenced an action—Montgomery M.C. No. CRB 95-00473—against Salmons for zoning violations.  *See* Administrative Transcript, Ex. 14. On March 4, 1995, a zoning inspector employed by the city executed an affidavit in connection with the action, averring that Salmons's violations consisted of "outdoor storage of junk, car parts[,] trailers, semi trucks, and inoperable/unlicensed motor vehicles."  *Id.*  The affidavit did not refer to a wrecking ball.

{¶ 18} Moreover, according to a long-time resident of the area who testified at the hearing, the parcels had never been used as a junk yard or an automobile salvage yard until Salmons purchased them "in the middle [19]90s * * * probably [in] [19]93 or something like that."  Transcript of Board Hearing 28-29.  The same witness testified that a series of other persons had owned the parcels before Salmons, and the witness further indicated that for a period of "about a year" before Stumpff occupied the site, the parcels were clear of junk vehicles.[4]  *Id.* at 29.  The witness was not asked to address

---

[4] The term "[j]unk, inoperable machinery, or inoperable vehicle" is defined as "a vehicle including, but not limited to cars, trucks, buses, trailers, motorcycles, all-terrain vehicles, snowmobiles and boats" that "is without a valid current registration or does not display a valid license plate"; that is "inoperable by reason of dismantling, disrepair, lack of fully inflated tires or other cause, and is incapable of being propelled under its own power";

Stumpff's testimony regarding the use of a wrecking ball to crush vehicles. *See also id.* at 21 (a city official testifying that Stumpff's testimony at the hearing was "the first [the official had] heard" of vehicle crushing on the parcels).

{¶ 19} The City of Riverside enacted its first zoning ordinances in 1994. *Id.* at 21. Stumpff did not establish the date on which Salmons purchased the parcels, nor did he establish the date on which he claims that Salmons began using the parcels to operate an automobile salvage yard. The record of the city's zoning action against Salmons indicates that Salmons was arguably using the parcels as an automobile salvage yard in 1995, but by that time, the city had already enacted zoning ordinances prohibiting such use. Given that Salmons seems to have purchased the parcels shortly before the city enacted its first zoning ordinances, or perhaps contemporaneously with the ordinances' enactment, the evidence presented to the Board did not suffice for a determination of whether Salmons's arguable use of the parcels as an automobile salvage yard began prior to the enactment of the city's first zoning ordinances or after the ordinances' enactment. Moreover, the evidence did not allow for a precise determination of the nature of Salmons's use of the parcels, which could have been consistent with an automobile repair shop, rather than a salvage yard.[5] *See* Transcript of Board Hearing 6, 16, 19 and 28-29; Administrative Transcript, Ex. 14.

---

that "has a substantially damaged or missing window, windshield, door, motor, transmission, or other similar major component"; or that, "due to its condition, cannot lawfully be operated upon any public street," or where applicable, "upon a public water-course." *See* Codified Ordinances, Section 1331.03; *see also* Codified Ordinances, Section 1117.03 (defining "[a]utomobile [s]alvage [y]ard").

[5] For example, unlicensed and inoperable vehicles might incidentally be stored on the premises of an automobile repair shop while awaiting repairs.

{¶ 20} Before the City of Riverside enacted its first zoning regulations, the use of Parcels 16, 18 and 19 as an automobile salvage yard would presumably have been lawful, but to prove that such use of the parcels continues to be lawful as a nonconforming use, Stumpff would have to have presented evidence that "the use [was] in existence prior to the enactment of the [city's] land use regulation[s]" in 1994. *Belich*, 8th Dist. Cuyahoga Nos. 84537 & 84807, 2005-Ohio-190, at ¶ 16. Stumpff provided little specific evidence regarding the nature of the use of the parcels earlier than 1994, yet his testimony leaves little doubt that he has used the parcels as an automobile salvage yard since he purchased them from Salmons in 1995.

{¶ 21} On the record of this case, we cannot hold that the trial court abused its discretion by affirming the decision of the Board. Stumpff presented some evidence to the Board—largely consisting of his own, somewhat imprecise testimony—that Parcels 16, 18 and 19 were used as an automobile salvage yard before the City of Riverside enacted its first zoning ordinances, but Stumpff bore the burden to prove as much by a preponderance of the evidence. *Wooster*, 158 Ohio App.3d 161, 2004-Ohio-3846, 814 N.E.2d 521, at ¶ 48. Other evidence, including the testimony of a zoning official of the City of Riverside and that of a long-time resident, suggested that the parcels had not been used as an automobile salvage yard earlier than 1994. In light of the ambiguity of the record, we cannot conclude that the trial court acted arbitrarily, unconscionably or unreasonably by affirming the Board's decision of April 9, 2018. Stumpff's first assignment of error is overruled.

{¶ 22} For his second assignment of error, Stumpff contends that:

THE COMMON PLEAS COURT COMMITTED AN ERROR OF LAW

[BY] TAKING NOTICE OF GREGORY SALMONS' NO CONTEST PLEA IN CASE NO. CRB 95 00473.

{¶ 23} Salmons pleaded no contest in Case No. CRB 95-00473 and was found guilty as charged, although the case was later dismissed. Here, Stumpff argues that the trial court erred pursuant to Crim.R. 11(B)(2) by "cit[ing] inadmissible evidence of Salmons's no contest plea and [by] gratuitously" finding that Salmons had thereby "acknowledge[d] [his] violation[s]" of the City of Riverside's zoning ordinances. Appellant's Brief 17.

{¶ 24} Crim.R. 11(B)(2) states that "[w]ith reference to the offense or offenses to which [a] plea is entered," a "plea of no contest is not an admission of [the] defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint, and the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding." (Emphasis added.) As the Board argues in its brief, the trial court did not consider Salmons's plea contrary to Crim.R. 11(B), because Salmons was not a party in the Board's hearing or in Stumpff's administrative appeal to the trial court.

{¶ 25} Even if the trial court did err by considering the plea, we hold that any such error was harmless, because even otherwise, Stumpff failed to meet his burden to prove by a preponderance of the remaining evidence that his use of Parcels 16, 18 and 19 was a continuation of a nonconforming use established before the enactment of the City of Riverside's zoning ordinances. Stumpff's second assignment of error is overruled.

{¶ 26} For his third assignment of error, Stumpff contends that:

THE COMMON PLEAS COURT COMMITTED AN ERROR [OF]

LAW BY FAILING TO ADDRESS THE ISSUE OF DURATION OF VOLUNTARY ABANDONMENT.

{¶ 27} Stumpff argues that the evidence related to Case No. CRB 95-00473 contradicted the testimony offered at the Board's hearing by a long-time resident of the City of Riverside, who testified that Parcels 16, 18 and 19 had been cleared of junk vehicles for approximately one year before Stumpff occupied the premises. Appellant's Brief 19; Transcript of Board Hearing 28-29. Consequently, Stumpff maintains that the trial court erred by referring to the testimony and to the evidence related to Case No. CRB 95-00473 "without resolving the [apparent] conflict." This argument is based on a mischaracterization of the Board's findings.

{¶ 28} Although Stumpff claims the Board found that "the case against * * * Salmons proved that junk cars were (illegally) [parentheses sic] on Parcels 16, 18, and 19 in April, May June, and July of 1995," the Board merely noted that at the time Stumpff purchased Parcels 16 and 18 from Salmons and leased Parcel 19, Salmons had been "found guilty of outdoor storage of junk and inoperable/unlicensed motor vehicles" six months earlier. Decision of the City of Riverside Board of Zoning Appeals 6-7. The Board noted further that the "charges were dismissed after Salmons cleaned up the property and removed the offending junk and motor vehicles," and on that basis, it found that Stumpff was thereby "definitely put on notice that he could not store outdoor junk or inoperable/unlicensed vehicles" on the parcels. Id. at 7.

{¶ 29} Irrespective of the significance the Board attached to Salmons's plea in Case No. CRB 95-004732, the trial court did not err by referring to the resident's testimony and to the evidence associated with the action against Salmons without making a

determination as to which was more accurate. In its judgment, the trial court referred to the testimony and to the record of Case No. CRB 95-00473 to illustrate that Stumpff had not offered evidence sufficient to allow a definitive determination of when, if ever, the nonconforming use of Parcels 16, 18 and 19 as an automobile salvage yard had been established. Given that Stumpff bore the burden to prove by a preponderance of the evidence that his use of the property was a continuation of a use established before the City of Riverside enacted its zoning ordinances, the trial court's consideration of the evidence was not error, nor was its purported failure to resolve the apparent conflict. Stumpff's third assignment of error is overruled.

### III. Conclusion

{¶ 30} The trial court did not err by affirming the Board's decision of April 9, 2018, because Stumpff did not prove by a preponderance of the evidence that his use of Parcels 16, 18 and 19 was a nonconforming use established by his predecessors in interest before the enactment of the City of Riverside's zoning ordinances. Furthermore, the trial court did not consider Salmons's plea in Case No. CRB 95-00473 contrary to Crim.R. 11(B)(2), but even if the court's consideration of the evidence was error, the error was harmless. Finally, the trial court did not err by failing to resolve the apparent conflict between the testimony of a resident of the City of Riverside and the record of Case No. CRB 95-00473. Therefore, the trial court's judgment of September 30, 2019, is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies sent to:

Konrad Kuczak
Dalma C. Grandjean
Steven E. Bacon
Hon. Barbara P. Gorman